UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    FILED

HERMAN K. GOLNIK, JR.,
               Plaintiff    :

       v.    :    3:02-CV-777 (EBB)

SUPERINTENDENT ANTHONY AMATO,    :
ATTORNEY FRANK DUMONT,    :
PRINCIPAL EVELYN IRIZARRY,    :
HARTFORD PUBLIC SCHOOLS,    :
STATE BOARD OF TRUSTEES FOR THE    :
HARTFORD PUBLIC SCHOOLS, and    :
THE CITY OF HARTFORD,    :
           Defendants    :

## RULING ON MOTION TO DISMISS

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.  The pertinent facts are culled from the Plaintiff's Second Amended Complaint.

### The Parties

Defendant Anthony Amato ("Amato") was the Superintendent of Schools at all times pertinent herein.  Defendant Attorney Frank Dumont ("Dumont") was Assistant Director of Labor Relations at the pertinent times.  Defendant Evelyn Irizarry was the Principal of Buckeley High School, where Plaintiff had taught Social Studies in an English as a Second Language class at Buckeley, commencing in 1999.

The remaining Defendants are: the Hartford Public Schools ("HPS"), the State Board of Trustees for the Hartford Public

Schools ("State Board"), and the City of Hartford (the "City").

### The Allegations of the Second Amended Complaint

Approximately one and one-half years after Plaintiff commenced teaching at Buckeley, on or about May 1, 2000, he experienced chest pains and took the next four days off from work in order to undergo medical procedures.

Plaintiff's teaching contract was renewed for the 2000-2001 school year. From September 25-27, 2001, Plaintiff took three personal days off from work. Upon his return, while attempting to teach a group of particularly rowdy students, Plaintiff's chest pains returned and he determined that he must leave school for medical attention. Although he could find no one to take over his class, he notified four persons, including the Head of the Social Studies program, that he was leaving.

On or about October 19, 2000, Plaintiff requested a confidential leave form, after being advised by his union representative, William Hagen ("Hagen") and Dumont that such a form was required to be filled out by his physician.

That same evening Dumont telephone Plaintiff at his house to inquire why he had been absent from school for three weeks. Plaintiff responded by telling him of the September 28 classroom incident and stated that "the kids were acting like animals." Dumont responded that any teacher who would refer to his students as "animals" should not be in a classroom environment.

On or about November 2, 2000, Plaintiff had another angiogram, which revealed 60% blockage in three coronary

arteries. On November 27, 2000, Plaintiff's physician wrote: "Mr. Golnick continues to experience atypical chest discomforts in situations of stress. It has been my recommendation that he seek temporary disability for three months to allow adequate time for avoidance of extremely stressful situations and the initiation of medical treatment." Exhibit 7 to Second Amended Complaint, as cited therein. This three-month period of temporary disability was the only accommodation sought by his physician in this letter.

On or about December 5, 2000, Plaintiff met in Principal Izirarry's office with her, Dumont, Hagen, and Harriet Marek (job responsibilities unknown). The purpose of the meeting was to further discuss the events of September 28 and, in contradistinction to his physician's recommendation, Plaintiff wished to discuss his return to work.

On January 31, 2001, Principal Izirarry did Plaintiff's evaluation as of that date. He was acknowledged as being "unsatisfactory" in all categories.

Plaintiff returned to work on February 26, 2001. At that time, he was assigned to zero "academic" classes (college bound students), three "General" classes (comprised of non-academic students), and two "basic" classes, which, according to Plaintiff, are "comprised of numerous disciplinary problems that require constant classroom policing."

On March 26, 2001, a letter of reprimand was officially sent to Plaintiff, based on the September 28 incident.

> On September 28, 2000, you left your class
> at Buckeley High School unattended. Subse-
> quently, you left the school prior to
> properly notifying the school's administrator
> and getting proper leave authorization.
> From September 28, 2000, until October
> 18, 2000, the school and central
> administration did not know of your
> whereabouts. During that time, you
> failed to inform the Hartford Public
> Schools of your status and failed to
> follow up with proper leave documentation.

*******

> As a teacher of the Hartford Public Schools,
> your actions were grossly inappropriate
> and unprofessional. You showed poor
> judgment in the handling of the situation.

See Exhibit 12 to Second Amended Complaint.

On March 30, 2001, Amato notified Plaintiff that his employment would not be renewed for the 2001-2002 school year.

On April 16, 2001, the Executive Director for Human Resources explained to Plaintiff Management's decision not to renew his teaching contract for the 2001-2002 school year. "Your employment will not be renewed because of your failure to meet the district's performance standards for continued employment of non-tenured teachers. Specifically, your performance as a teacher failed to demonstrate excellence or the potential for excellence." Exhibit 10 to Second Amended Complaint.

On or about May 16, 2001, Hagen advised Principal Izirarry that Management had failed to evaluate Plaintiff within the confines of the Collective Bargaining Agreement ("CBA"). Accordingly, Vice-Principal Brenda Lewis-Collins re-evaluated Plaintiff on that day. She reported that "Mr. Golnik never

4

submitted any lesson plans and therefore there was no evidence of daily planning.  Objectives for the academic year 2001-2002 were never submitted.  Classroom management is an area of concern."  Exhibit 13, Second Amended Complaint.

On September 12, 2001, a sub-committee of the State Board recommended the non-renewal of Plaintiff's contract for the 2001-2002 school year, following a hearing on the issue.  Plaintiff was given the opportunity to present witnesses and other evidence in support of his claim that the non-renewal decision was "arbitrary and capricious."  In addition, Plaintiff was given the opportunity to cross-examine witnesses presented by the Superintendent and to be represented by counsel at the hearing.  See Exhibit 14, Second Amended Complaint.  The sub-committee found that the Superintendent's decision was not arbitrary and capricious, nor was that of Principal Irizarry. In summation, the sub-committee recommended that the State Board uphold Superintendent Anthony Amato's decision not to renew the employment of Plaintiff for the 2001-2002 school year.

For reasons not stated in the Second Amended Complaint, Amato, on September 18, 2001, determined to reinstate Plaintiff.  On or about December 3, 2001, Plaintiff presented himself at the James Naylor School, to teach classes to which he was assigned in February.  He remained in this position for exactly one day, before leaving for medical reasons again.

On or about April 1, 2002, Plaintiff was once again provided a letter from Amato which stated that Amato's intention was not

5

to renew his contract for the 2002-2003 school year.  On April
30, 2002, an appeal hearing was held, at which time the State
Board, once again, supported the Superintendent's decision.  To
date, Plaintiff has never returned to any teaching position.

On or about July 16, 2002, Plaintiff filed an Affidavit of
Illegal Discriminatory Practice with the CHRO.  The only named
Respondents were the HPS, Amato, and Irizarry.  The State Board
and the City were not named as "Respondents" before the CHRO or
the EEOC.

## LEGAL ANALYSIS

I.   **The Standards of Review**

**Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)
should be granted only if "it is clear that no relief could be
granted under any set of facts that could be proved consistent
with the allegations." Hishon v. Spalding, 467 U.S. 69, 73
(1984), *citing* Conley v. Gibson, 355 U.S. 41, 48 (1957). The

function of a motion to dismiss is "not to weigh the evidence
that might be presented at trial but merely to determine whether
the complaint itself is legally sufficient." Festa v. Local 3
Int'l Bd. of Elec. Workers, 905 F.2d 35, 37 (2d Cir. 1990).
Additionally, pursuant to a Rule 12(b)(6) analysis, the Court
takes all well-pleaded allegations as true, and all reasonable
inferences are drawn and viewed in a light most favorable to
Plaintiff. *See* Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); *see*

6

*also* <u>Conley</u>, 355 U.S. at  48 (holding that Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case). However, Rule 12(b)(6) does not allow the substitution of conclusory statements "for minimally sufficient factual allegations." <u>Furlong v. Long Island College Hosp.</u>, 710 F.2d 922, 927 (2d Cir. 1983).

As here, "[w]hen subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the movant and the pleader may use affidavits and other pleading materials to support and oppose such motions." <u>Greenery Rehabilitation Group, Inc. v. Sabol</u>, 841 F.Supp. 58. 61 (N.D.N.Y. 1993). "Consideration of materials outside the complaint on a motion to dismiss pursuant to Rule 12(b)(1) does **not** convert the motion into one for summary judgment." <u>Hicks v. Brophy</u>, 839 F.Supp. 948. 950 (D.Conn. 1993)(emphasis in original), *citing* 2A *Moore's Federal Practice* ¶ 12.-07[2.1] (1993). *Accord* <u>Ensign-Bickford Co. v. ICI Explosives USA Inc</u>., 817 F.Supp. 1018, 1023 (D.Conn. 1993).

**II.   The Standards as Applied**

**A. CFEPA, ADA, Rehabilitation Act of 1973, and ADEA**

In Counts One, Three, and Seven, Plaintiff attempts to assert causes of action against Defendants HPS, the State Board, and the City for violations of CFEPA, the ADA, the Rehabilitaion Act of 1973, and the ADEA.  These claims are hereby DISMISSED, inasmuch as Plaintiff failed to file these charges against these entities within ninety days of receiving a release of

jurisdiction from the CHRO.

The statutory bases for bringing complaints of employment discrimination under CFEPA are to be found in Conn.Gen.Stat. Sections 46a-100 and 46a-101.  Section 46a-100 provides that the plaintiff "**may** bring an action in the Superior Court . . ." Section 46a-101 requires that any 46a-100 action "**shall** be brought within ninety days of the release [by the CHRO]. . . .". In 1996, the Connecticut Supreme Court held, in <u>Angelsea Productions, Inc. v. CHRO</u>, 236 Conn. 681, 694 (1996), that "the use of the word `shall' in conjunction with the word `may' confirms that the legislature `acted with complete awareness of the different meanings'; <u>Hartford Principals & Supervisors' Assn. v. Shedd</u>, 202 Conn. 492, 506 (1987)'; and that it intended the terms to have different meanings."

> The test we have adopted for determining whether such a statutory requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial - - to matters of convenience or substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory.. . . Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . ., but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute.

<u>Angelsea</u>, 236 Conn. at 690 (citations omitted).

8

Applying this analysis, this Court holds that Section 46a-101 is mandatory, inasmuch as the failure to comply with the requirement of this statute would compromise its purpose. Hence, this Court's jurisdiction is limited by statute to those cases commenced within the prescribed ninety-day time period. *See* Kinkade v. Wiseman, 1997 WL 816504 at * 2 (Conn.Super.Ct. December 30, 1997)(failure to comply with the conditions established by the CFEPA forecloses a [plaintiff's'] access to judicial relief, because it [deprives] the trial court of jurisdiction to hear his complaint).

In the present case, the CHRO issued its release of jurisdiction on February 26, 2002. The original Complaint, filed on May 6, 2002, named only Amato, Dumont, and Irizarry as Defendants, each of whom is alleged to be "an individual." *See* Original Complaint at "Parties" ¶¶ 2-4. Once Plaintiff decided that he should include the HPS, State Board, and the City as Defendants in this action, he filed his August 6, 2002 "Motion to Amend and Join Additional Parties", which plainly states that: "**additional** Defendants are sought to be named as necessary parties to the complaint." (Emphasis added). [1]/ The motion does not state that it was being filed to clarify some ambiguity in the Original Complaint. Thus, the pleadings in this case irrefutably establish that the HPS, State Board, and the City never became parties to this action until on or about September 16, 2002, when Plaintiff's First

---

[1]/ The proposed Amended Complaint was not attached to the Motion.

Amended Complaint was filed - - approximately **6½ months after the release of jurisdiction from the CHRO.**

Resultingly, this Court has no jurisdiction over the CFEPA claims brought against the HPS, State Board, and the City. Hence, the CFEPA claims against these three parties, found in Counts One, Three, and Seven are hereby DISMISSED. Further, all claims against the State Board and the City asserted in Counts One, Three and Seven of the Second Amended Complaint, brought pursuant to the ADEA, the Rehabilitation Act of 1973, and the ADA, are hereby DISMISSED for failure to exhaust administrative remedies as to such entities. The ADEA, the Rehabilitation Act of 1973, and the ADA each require a plaintiff to exhaust his administrative remedies against a defendant before commencing suit. <u>Polera v. Board of Educ. Of Newburgh Enlarged City School District</u>, 288 F.3d 478, 481 (2d Cir. 2002); <u>Miller v. International Telephone & Telegraph Corp</u>, 755 F.2d 20, 23 (2d Cir) *cert den'd* 474 U.S. 851 (1985). The City was neither referred to nor named in the CHRO/EEOC Complaint; the State Board is also not named as a respondent. Consequently, this Court lacks subject matter jurisdiction over the City and the State Board as to Plaintiff's ADEA, Rehabilitation Act, and ADEA claims for for lack of exhaustion of administrative remedies. Nor is the "identity of interests" doctrine applicable to this case. "The `identity of interests' exception has been held to apply only when plaintiffs were not represented by counsel at the time they filed their administrative discrimination charge." <u>Peterson v. City of Hartford</u>,

80 F.Supp. 2d 21, 24 (D.Conn. 1999)(citations omitted). In the present case, Plaintiff was represented by counsel when he filed his Complaint with the CHRO and EEOC.

**B.    Intentional Infliction of Emotional Distress**

In order to succeed on a claim for intentional infliction of emotional distress, Plaintiff must establish the following: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." Appleton v. Stonington Bd. of Ed., 254 Conn. 205, 210 (2000), citing Petyan v. Ellis, 200 Conn. 243, 253 (1986). In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them. See Meyers v. Bunker Ramo Corp., 1992 U.S. Dist. LEXIS 5336 at * 26 (D. Conn. 1992). Because this Court finds that Defendants' alleged conduct was not "extreme and outrageous," the other three elements will not be addressed.

Whether Defendants' conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the Court. See Johnson v. Cheeseborough-Ponds U.S.A. Corp., 918 F.Supp. 543, 552 (D. Conn.), aff'd, 104 F.2d 355 (2d Cir. 1996), citing Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 18 (Conn. Super. Ct. 1991). Only where "reasonable minds may differ" does

11

it become a question for the jury. Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986); see also Restatement (Second) of Torts § 46, cmt. (h) (1965). The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Mellaly, 42 Conn. Supp. at 19-20, quoting W. Prosser & W. Keeton, Torts § 12, at 60 (5th ed. 1984);see also Restatement (Second) of Torts § 46, cmt. (d) (1965) ("Liability has been found only where the conduct had been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.") [2]/ "[M]ere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." Brown v. Ellis, 40 Conn. Supp. 165, 167 (Conn. Super. Ct. 1984). This Court, however, finds that Plaintiff's allegations do not satisfy the above requirements of extreme and outrageous conduct.

Courts in Connecticut have been reluctant to allow a claim for intentional infliction of emotional distress. See, e.g., Dollard v. Board of Educ., 63 Conn.App. 550, 554 (2001) (plaintiff's claim of concerted plan to force plaintiff to resign or become so distraught as to have reason to terminate her does not rise to intentional

---

[2] "In interpreting what constitutes `extreme and outrageous' conduct, Connecticut courts have relied on the Restatement (Second) of Torts §46, comment (d) (1965). . . ." Thompson v. Service Merchandise, Inc., No. 3:96CV1602 (GLG), 1998 U.S. Dist. LEXIS 13669, at *4 (D. Conn. 1998). See also Appleton, 254 Conn.at 210; Petyan, 200 Conn. at 254.

infliction of emotional distress claim); <u>Appleton</u>, 254 Conn. at 211
(finding allegations that school officials made derogatory comments
concerning plaintiff's work performance and his ability to read, in
front of other employees, contacted plaintiff's daughter to recommend
that plaintiff take some time off because he was acting erratically,
and arranged to have him escorted by police off of school property
insufficiently extreme or outrageous to state a cause of action);
<u>Emanuele v. Baccaccio & Susanin</u>, 1994 WL 703923 at * 2 (Conn. Super.
Ct., Apr. 10, 1992) (holding conduct not extreme and outrageous where
at-will employee alleged her employer made false accusations regarding
her work performance, and used coercion, threats and intimidation to
force her to sign a document against her will, all for the purpose of
depriving her of benefits and compensation); <u>Rock v. Mott
Metallurgical Corp.</u>, 2001 Conn. Super. LEXIS 207 at * 13-21 (Conn.
Super. Ct., Jan. 10, 2001) (granting defendant's motion for summary
judgment where plaintiff alleged that she was ordered to lift and
carry heavy objects beyond her ability, was required to work without
being supplied the necessary resources, was transferred to a work
station without a chair or desk, was called names, and was falsely
accused of not finishing her work, because in totality the acts were
"less than `extreme' and `outrageous' in nature").

Similarly, the federal courts in this District, applying
Connecticut law, have interpreted the qualification of extreme and
outrageous conduct strictly. *See, e.g.,* <u>Armstead v. Stop & Shop Cos</u>.
2003 U.S. Dist. LEXIS 4107 at *14-15 (D.Conn. March 17,
2003)(dismissing intentional infliction of emotional distress claim,

13

holding that "claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is extreme and outrageous."); Harhay v. Blanchette, 160 F.Supp.2d 306, 315 (D.Conn. 2001)(termination of employee, even when accompanied by other aggravating factors, does not itself give rise to a claim for intentional infliction of emotional distress); White v. Martin, 23 F.Supp.2d 203, 208 (D.Conn. 1998)(general allegations of discrimination. . . and harassment "fall short of misconduct which exceeds `all bounds usually tolerated by a decent society'".); Thomas v. St. Francis Hosp. & Med. Ctr.  , 990 F.Supp. 81, 92 (D.Conn. 1998)(verbal warnings, suspension, and termination may have resulted in hurt feelings, but were insufficient to support claim of intentional infliction oif emotional distress); DeLeon v. Little, 981 F.Supp. 728, 737-38 (D.Conn. 1998)(conduct was not sufficiently outrageous where City supervisor allegedly ordered employee to purchase illegal drugs, stand guard while supervisor ingested same, perform personal errands for supervisor, perform tasks for a private employer, and where supervisor implemented a discriminatory sick leave policy, threatened to replace employee with a person of a different race, and repeated degrading and humiliating criticism of employee in front of others);  Johnson v. Cheeseborough-Pond's USA Co., 918 F.Supp. 543, 551 (D.Conn.1996)(negative performance reviews, sudden termination, and being physically escorted from premises not actionable as intentional infliction of emotional distress); Lopez-Salerno v. Hartford Fire Ins.  , 1997 WL 766890 (D. Conn., Dec. 8,

14

1997) (granting motion to dismiss where plaintiff alleged she was terminated so that defendant could avoid giving her long-term disability benefits); <u>Thompson</u>, 1998 U.S. Dist. LEXIS 13669, at *2-3 (granting motion for summary judgment and finding that allegations made by plaintiff of employer downgrading her race, removing her responsibilities in order to undermine her authority, and failing to provide adequate supervision and sufficient staff to do her job, did not constitute extreme and outrageous conduct).

In the present case, Plaintiff fails to allege any specific conduct in his Amended Complaint which would demonstrate that Defendants' actions were extreme and outrageous. Defendant Amato is not alleged to have personally undertaken any adverse actions against Plaintiff, but rather has been grouped indiscriminately with other Defendants in non-renewing Plaintiff's employment contract on two occasions. Similarly, Defendant Irizarry is charged solely with the completion of some part of an evaluation of Plaintiff and recommending that his teaching contract not be renewed. Defendant Dumont is alleged to have: reacted negatively to Plaintiff's admitted statement that his students were acting like "animals"; questioned Plaintiff's qualifications to teach; suggested that Plaintiff retire; suggested that the HPS system no longer desired Plaintiff's services; suggested that Plaintiff was abusing the system; acted rudely to Plaintiff's union representative; and denied Plaintiff access to sick leave for a limited period of time. Finally, the HPS the State Board, and the City of Hartford are alleged to have: heard Plaintiff's appeal of the Superintendent's decision not to renew Plaintiff's teaching contract;

15

persuaded the Superintendent to withdraw the first non-renewal letter; failed to give proper weight to Plaintiff's alleged evidence and arguments in the second non-renewal hearing; and upheld the second non-renewal decision.

Applying the appropriate stringent standards in light of the multitude of precedents cited above, the Court finds that Defendants' conduct as alleged in the Second Amended Complaint did not exceed all bounds of decency and is not "extreme and outrageous." Hence, Count Four is dismissed for failure to state a claim upon which relief may be granted.

### C.    Negligent Infliction of Emotional Distress

In order to establish a cause of action for negligent infliction of emotional distress, the Plaintiff must prove that Defendant should have: (1) realized that its conduct involved an unreasonable risk of causing distress to Plaintiff; and (2) realized that the distress, if caused, might result in illness or bodily harm. *See* Barrett v. Danbury Hospital, 232 Conn. 242, 260-61 (1995). When the alleged infliction occurs in the workplace, Connecticut imposes additional requirements. "[N]egligent infliction of emotional distress in the employment context arises only where it is `based upon unreasonable conduct of the defendant in the termination process.' The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable

16

behavior`" <u>Parsons</u>, 243 Conn at 88-89, *citing* <u>Morris,</u> 200 Conn. at 682

*and* <u>Mandini v. Kendell Ford, Inc.</u>, 312 Or. 198, 204 (1991). The tort

of negligent infliction of emotional distress "focuses on the manner

of discharge; whether the employer's conduct in the termination was

unreasonable, not whether the termination of employment was

unreasonable." <u>Lopez-Salerno v. Hartford Fire Ins. Co.</u>, 1997 WL

766290 (D.Conn. Dec.8, 1997)(granting motion to dismiss negligent

infliction of emotional distress claim). *See also* <u>Whitaker v. Haynes</u>

<u>Constr. Co.</u>, 167 F.Supp.2d 251. 2557 (D.Conn. 2001)(granting motion to

dismiss negligent infliction of emotional distress claim inasmuch as

plaintiff had failed to present factual allegations demonstrating that

his termination had been carried out in an unreasonable, humiliating,

or embarrassing manner).

Absent from Plaintiff's Complaint are **any** allegations regarding

Defendants' conduct during the non-renewal of his teaching contract

which were unreasonable in said process. *See* <u>Armstead</u>, 2003 U.S.Dist.

LEXIS at * 19 (dismissing negligent infliction of emotional distress

claim where "[o]ther than conclusory characterizations . . . most of

plaintiff's allegations [did] not describe conduct during the

termination process but rather describe[d] defendant's underlying

motivation . . . or relate[d] to pre-termination conduct"). Thus, the

issue in a claim for negligent infliction of emotional distress is the

Defendant's conduct, not his intent. "Courts have consistently held

that termination for discriminatory reasons, without more, is not

enough to sustain a claim for negligent infliction of emotional

17

distress." <u>Miner v. Town of Cheshire</u>, 126 F. Supp.2d 184, 198 (D. Conn. 2000); *see also*, <u>Newtown v. Shell Oil Co.</u>, 52 F. Supp. 2d 366, 367 (D. Conn. 1999); <u>Thomas v. St. Francis Hosp. Med. Ctr.</u>, 990 F.Supp. at 92. Therefore, even if Defendant had a discriminatory motive in terminating Plaintiff, which this Court is not deciding herein, improper motivation alone still is insufficient to satisfy the requirements of negligent infliction of emotional distress.

As this Court wrote four years ago, ". . . the Court is not persuaded that the actions that the Defendants took in terminating the employment of Plaintiff were so unreasonable as to support claims for negligent infliction of emotional distress. Plaintiff must plead, and be able to prove, that his termination was `humiliating' and the manner of his termination was different in any way from the usual termination of employment." <u>Giordano v. Gerber Scientific Products, Inc.</u>, 1999 WL 1067820 at * 2 (D.Conn. Nov. 5, 1999)(EBB), *aff'd* 2001 WL 1586451 (2d Cir. Dec. 10, 2001). *Accord* <u>Chiefflo v. Norden Systems, Inc.</u>, 49 Conn.App. 474, 480-81 (1998); <u>Pavislek v. Bridgeport Hospital</u>, 48 Conn.App. 580, 598 (1998). The Court decides this case in like manner. The Court is not persuaded that the actions that the Defendants took in terminating the employment of Plaintiff were so unreasonable as to support a claim for the negligent infliction of emotional distress. Resultingly, Count Five is hereby DISMISSED.

## C.   <u>Negligence</u>

### 1.   <u>Alleged Negligence as to the City</u>

"A municipality is immune from liability for negligence unless

18

the legislature has enacted a statute abrogating that immunity."
<u>Williams v. City of New Haven</u>, 243 Conn. 763, 766 (1998)(well-settled
law of Connecticut is that a municipality is not liable for negligence
in the performance of a governmental function). As opposed to
abrogating municipal liability for governmental acts, the Connecticut
legislature, in Conn.Gen.Stat. Section 52-557n(2)(B), granted, in
pertinent part, such immunity. *See, e.g.,* <u>Evoy v. City of Hartford</u>,
2001 WL 777431 (D.Conn. June 25, 2001)( municipal acts or omissions
involving failure to screen, hire, train, supervise, control and
discipline police officers discretionary, governmental acts as matter
of law). Thus, the City is immune from any claim of negligence
against it, as pleaded herein, as it is beyond cavil that the alleged
negligent acts against the City are each discretionary in nature.

    2. **Alleged Negligent Hiring**

    The Appellate Court of this State, has held that the existence of
the negligent hiring doctrine exists to protect **only** a member of the
general public, as opposed to an employee of the employer. <u>Ray v.
Schneider</u>, 16 Conn.App. 660, 672, *cert. den'd*, 209 Conn. 822 (1988).
Hence, pursuant to this rationale, with which this Court agrees,
Plaintiff cannot state a viable claim for the alleged negligent hiring
of Dumont, as Plaintiff is an employee of HPS and the City and not a
member of the general public.

    3. **Alleged Negligent Retention**

    In Count Eight of his Second Amended Complaint, Plaintiff alleges
that the HPS. the City, and Amato hired Dumont as labor counsel for

the HPS. ¶ 106. Further, Plaintiff alleges that Dumont was directly involved in (or allowed such events to occur) the two decisions not to renew Plaintiff's teaching contract, Plaintiff's reprimand, the decision to deny Plaintiff access to sick leave bank time, the refusal to return Plaintiff to a high school teaching position, the delay in returning Plaintiff to a teaching position after the first non-renewal of Plaintiff's teaching contract was rescinded, and the denial of certain rights to hearings and unspecified retaliation. Second Amended Complaint at ¶ 108. Plaintiff also contends that these Defendants were aware of Dumont's alleged outrageous conduct, [2]/ had received complaints about such conduct, yet continued to employ him. *Id.* at ¶ 109. Finally, Plaintiff alleges that "[a]s a direct result of the Defendants hiring and retaining Frank Dumont", Plaintiff was "irreparably harmed.". *Id.* at ¶ 110. However, the Second Amended Complaint fails to plead, by any substantive fact, anything but this conclusory statement of alleged "irreparable harm."

"The general rule developed in our case law is that Connecticut law only recognizes a claim for negligent retention when: (a) the Defendants knew or had reason to know that an employee has a propensity to engage in tortious conduct; and, (b) the Plaintiff satisfies the requisite pleading mandates of a claim for negligent infliction of emotional distress where the only injuries alleged to have resulted are emotional, contrary to physical injury." Karanda v. Pratt & Whitney Aircraft, 1999 Conn.Super.WL 329703 (Conn.Sup.Ct., May

---

[2]/ The Court has already held that Dumont's conduct was not extreme or outrageous. *See* Part B, *supra.*

10, 1999). *Accord* <u>Surowiec v. Security Forces, Inc.</u> 1995 Conn.Super

LEXIS 1587 at *11-13 (Conn.Sup.Ct. May 24, 1995)(granting motion to

strike negligent supervision/retention claim because any right to

recover damages restricted in same manner as that of any other person

who claims to have suffered the negligent infliction of emotional

distress where the only injury sustained is emotional rather than

physical).

    In Count Four, the claim for negligent infliction of emotional

distress, Plaintiff indeed identifies his injuries as emotional rather

than physical. However, he has not succeeded in this cause of action,

inasmuch as there is no liability under Connecticut law for negligent

infliction of emotional distress at any time other than during the

termination process. <u>Parsons</u>, 243 Conn. at 88-89 (no liability under

Connecticut law for negligent infliction of emotional distress arising

out of conduct occurring within a continuing employment context, as

distinguished from conduct occurring in the termination of

employment).  Firstly, the nine incidents of alleged misconduct by

Dumont, as set forth in paragraph 108 of the Second Amended Complaint,

each fall within the continuing employment context, as each consists

of pre-termination conduct. Secondly, the Second Amended Complaint is

devoid of any substantive allegations suggesting that Dumont: (1)had

a history of engaging in tortious conduct; (ii) Defendants were aware

that Dumont allegedly engaged in tortious conduct; and (iii) these

Defendants failed to adequately investigate and/or punish Dumont

before the Plaintiff was terminated. The sole, conclusory contention

as to Dumont's alleged "tortious conduct" is that Defendants had

received complaints regarding Dumont's "unprofessional and outrageous behavior with Plaintiff and others." Nowhere are the "others" identified, just as Dumont's unprofessional and outrageous conduct as to these "others" is not set forth in any substantive, factual manner. Too, Plaintiff fails to support his allegation that Defendants were aware of this kind of alleged behavior on the part of Dumont.

For each of these reasons, Count Eight is hereby DISMISSED.

**4.   LMRA and Breach of Contract**

Plaintiff contends, in Count Six of his Second Amended Complaint, that unidentified "Defendants, through their actions, have violated the parties [sic] including, but not limited to, subjecting [sic] Plaintiff access to sick leave bank, evaluating Plaintiff in his absence and while on proper pay scale, denying Plaintiff his seniority rights, denying Plaintiff's right to union representation . . . and failing to even attempt to timely move the violations of the CBA between the State Board of Trustees for the HPS and the Hartford Federation of Teachers, Local 1018, AFT, AFL-CIO (the "Union"), to arbitration." Second Amended Complaint at ¶ 100.

The Court holds that this breach of contract claim requires it to interpret the CBA and, thus, Plaintiff's claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

"In enacting § 301, Congress intended that uniform federal labor law would prevail over inconsistent local rules . . . .As a result, disputes over . . . the consequences of a breach of contract must be resolved according to federal law." Fonseca v. RBC Hein Bearings

22

Corp., 87 F.Supp.2d 137, 138 (D.Conn. 2000). *Accord* <u>Anderson v. Coca-Cola Bottling Co. of New York</u>, 772 F.Supp. 77, 80 (D.Conn. 1991) *citing* <u>Allis Chambers Corp. v. Lueck</u>, 471 U.S. 202, 209-11 (1985). *Accord* <u>United States of America v. Rawson</u>, 495 U.S. 362, 371 (1990). "[W]here the resolution of a state-law claim depends upon the interpretation of the collective bargaining agreement, the claim is pre-empted." <u>Foy v. Pratt & Whitney Group</u>, 127 F.3d 229, 233 (2d Cir.1997) *citing* <u>Hawaiian Airlines Inc. v. Norris</u>, 512 U.S. 246, 260-262)(1994).

In this case, Plaintiff alleges that the CBA was violated by certain acts of the Defendants. Plaintiff relies upon no other contract or agreement for his breach of contract claim. In other words, his breach of contract claim is wholly dependent upon the provisions of the CBA. In order to determine whether the Defendants violated the CBA, the Court must necessarily interpret the CBA. As the Second Circuit has held: "[u]nder Section 301, state law based claims for suits for violations of contracts between an employer and a labor organization are **completely preempted**." <u>Hernandez v. Conriv Realty Associates</u>, 116 F.3d 35, 38 (2d Cir. 1997)(internal quotations and citations omitted)(emphasis added).

Accordingly, the Court holds that Plaintiff's breach of contract claim is preempted by Section 301 of the LMRA and hereby DISMISSES Count Six of the Second Amended Complaint. *Accord* <u>Claps v. Moliterno Stone Sales, Inc</u>., 819 F.Supp. 141, 150-51 (D.Conn. 1993); <u>Ziobro v. Connecticut Institute for the Blind</u>, 818 F.Supp. 497, 501 (D.Conn.

1993).

## CONCLUSION

For each of the foregoing reasons, Defendant's Motion to Dismiss the Second Amended Complaint [Doc. No. 21] is hereby GRANTED. The Clerk is directed to close this case.

SO

ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 30th day of December, 2003.

24